AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
MAR 07 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Cell Site information held by The Sprint Corporation, ) Case No. '19MJ8711
headquartered at 6200 Sprint Parkway Overland Park, )
Kansas 66251 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT A
(INCORPORATED HEREIN)

located in the ____Federal____ District of ____Kansas____, there is now concealed *(identify the person or describe the property to be seized):*

SEE ATTACHMENT B
(INCORPORATED HEREIN)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952 and 960 | Importation and conspiracy to import Methamphetamine. |

The application is based on these facts:

SEE AFFIDAVIT OF SPECIAL AGENT SHAWN PAYNTER.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Shawn Paynter
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/7/2019

_____
*Judge's signature*

City and state: El Centro, California     Hon. Ruth Bermudez Montenegro, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

This warrant applies to records and information associated with the cellular telephone number 323-490-2428, **Target Data**, that are stored at premises controlled by The Sprint Corporation, headquartered at 6200 Sprint Parkway Overland Park, Kansas 66251.

## ATTACHMENT B

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of July 16, 2018 up to and including October 17, 2018:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital

       Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

    i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    ii. information regarding the cell towers and sectors through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 952 and 960 during the period of July 16, 2018 up to and including October 17, 2018.

## **AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Special Agent Shawn Paynter, having been duly sworn, do hereby state that the following is true to my knowledge and belief.

### **INTRODUCTION**

1. This affidavit supports an application for a warrant for information associated with The Sprint Corporation telephone number 323-490-2428 (the "**Target Data**"), including subscriber information, telephone toll data, and cell-site geo-location information, for the period of July 16, 2018, up to and including October 17, 2018. As set forth below, probable cause exists to believe that the **Target Data** contains evidence of the importation of controlled substances, in violation of 21 U.S.C. §§ 952 and 960. The **Target Data** is currently in the possession of The Sprint Corporation, headquartered at 6200 Sprint Parkway Overland Park, Kansas 66251. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require The Sprint Corporation to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

### **TRAINING AND EXPERIENCE**

2. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510 (7), that is an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. As a Special Agent with Homeland Security Investigations (HSI), I am cross-designated under Title 21 to investigate criminal violations of the Controlled Substances Act. My responsibilities include investigating and enforcing violations of Federal law including, but not limited to, the enforcement of Federal narcotics laws, Immigration laws, the Money Laundering Control Act, and various Customs violations.

3. I am a Special Agent (SA) with HSI and have been so employed since September of 2017. I am currently assigned to the Contraband/Smuggling II (Cargo-Commercial Fraud) Unit of the Office of the Assistant Special Agent in Charge, Calexico, California (ASAC Calexico). I have conducted multiple criminal investigations into violations of federal and state law including, but not limited to, contraband smuggling, narcotics trafficking, and organized criminal activity. Prior to becoming an HSI special agent, I was employed as a Federal Air Marshal with the Federal Air Marshal Service and as a Police Officer with the Upper Arlington (OH) Police Department. During my career, I have obtained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer evidence seizure and processing, and various other criminal laws and procedures. I have personally participated in the execution of numerous search and seizure warrants.

4. Based on my training and experience as a law enforcement officer, I am familiar with the ways in which drug smugglers and traffickers conduct their business. Indeed, during the course of my duties I have (1) worked as a case agent, directing specific drug-related investigations; (2) worked as a surveillance agent who observed and recorded movements of individuals suspected of trafficking drugs; (3) participated in the execution of search warrants related to drug investigations; (4) initiated and executed arrests for drug-related offenses; and (5) interviewed criminal defendants, witnesses, and informants in furtherance of investigations into the illegal smuggling and trafficking of controlled substances. Through these duties, I have gained a working knowledge and insight into the operational habits of drug smugglers and traffickers.

5. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

6. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers will use cellular telephones because they are mobile, and they have instant access to telephone calls, text, web, and voice messages.

   b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

   c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

   d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

   e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

   f. Drug smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

   g. The use of cellular telephones by conspirators or drug smugglers tends to generate evidence of the cellphone's location by communicating with cellphone towers located near the phone.

3

## FACTS IN SUPPORT OF PROBABLE CAUSE

7. On October 16, 2018, at approximately 8:41 A.M., Maria Trinidad LOPEZ-Ibarra (LOPEZ), a United States Lawful Permanent Resident, applied for entry into the United States at the Calexico, California, East Port of Entry by presenting a Lawful Permanent Resident Card, A#070937054. LOPEZ was the sole occupant of a blue Honda Pilot bearing California license plate 7VHL610 and is the registered owner of said vehicle.

8. While assigned to primary lanes, Customs and Border Protection Officer (CBPO) M. Gonzalez received a negative oral Customs Declaration from LOPEZ. LOPEZ's crossing generated an Automated Targeting Systems hit (ATS-HIT), and CBPO M. Gonzalez sent LOPEZ to the Z-Portal machine and the vehicle secondary lot for further inspection. During secondary inspection, CBPO A. Moreno noticed that the bolts fixed to the third-row seats appeared to be tampered with. CBPO A. Moreno advised CBPO H. Siqueiros, the Z-Portal machine operator, of the observed anomalies to the vehicle.

9. Working as the primary operator of the Z-Portal machine, CBPO H. Siqueiros scanned the vehicle which revealed anomalies in the vehicle's undercarriage below the third rear seat. CBPO H. Siqueiros advised CBPO A. Moreno about the findings.

11. During secondary inspection, a Canine Enforcement Officer (CEO) screened the vehicle with a Human/Narcotics Detection Dog (HNDD), The HNDD alerted to the floor of the vehicle behind the second row of seats.

12. Further inspection of the vehicle revealed an access plate under the rear seat. Once removed, numerous packages could be seen in the compartment. Field-testing one of the packages revealed a crystal-like substance, which tested positive for the properties and characteristics of methamphetamine. A total of ten (10) packages from this compartment were removed, for a total weight of approximately 17.72 kilograms (39.06 pounds). LOPEZ was placed under arrest by CBPO A. Moreno, who subsequently contacted HSI to respond. CBPO A. Moreno also seized the Target Device from the center console of the vehicle. Custody of the Target Device was subsequently transferred HSI.

13. HSI SA S. Paynter responded, placed LOPEZ under arrest, and took possession of the Target Device. SA S. Gonzalez responded to translate from the Spanish to English language. LOPEZ acknowledged to HSI SAs that the Target Device belonged to her (LOPEZ). LOPEZ was paroled into the United States and, after an initial investigation, SAs S. Paynter and A. Schloe transported LOPEZ to the Imperial County Jail to be booked.

14. LOPEZ is currently charged with violations of 21 U.S.C. §§ 952 and 960.

15. Drug Enforcement Agency Laboratory analysis confirmed that there was approximately 18 kilograms of methamphetamine.

16. Based on the facts above, there is reason to believe that LOPEZ used cellular telephone #1 associated with The Sprint Corporation telephone number 323-490-2428 to communicate with other known and unknown co-conspirators to facilitate the importation of controlled substances. I believe that the **Target Data** may identify locations in the United States where LOPEZ was delivering narcotics.

17. In my training and experience, I have learned that The Sprint Corporation is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

5

18. Based on my training and experience, I know that The Sprint Corporation can collect cell-site data about the telephone number 323-490-2428. I also know that wireless providers such as The Sprint Corporation typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business to use this information for various business-related purposes.

19. Based on my training and experience, I know that wireless providers such as The Sprint Corporation typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as The Sprint Corporation typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the telephone number 323-490-2428's user or users and may assist in the identification of co-conspirators.

## CONCLUSION

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

21. Based upon my training and experience, consultation with other law enforcement officers experienced in the importation of controlled substances, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the **Target Data** to be seized, as set forth above and in Section I of Attachment B (incorporated herein), will be found in the location described in Attachment A (incorporated herein).

//
//
//

22. Therefore, I respectfully request that the Court issue a warrant requiring The Sprint Corporation to search its corporate records for the **Target Data** and to deliver the **Target Data** listed in Section I of Attachment B, so that I or another federal law enforcement agent may review the **Target Data** and seize the items described in Section II of Attachment B.

Shawn Paynter, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this __7th__ day of March, 2019.

Hon. Ruth Bermudez Montenegro

United States Magistrate Judge

7